Englehart may please the court. I represent the appellant in this case, Caris. Now, we are asking the court to do two things. One, to reverse the district court's sua sponte dismissal for lack of subject matter jurisdiction, and two, to direct that this case be remanded to Texas state court. So let me take each of those in turn. On the question of the sua sponte dismissal, it is undisputed in this case that however the claims that Caris as a provider have brought against United as an M.A.O. are adjudicated, no enrollee will be liable, no enrollee will be denied coverage, and the government will not be asked to pay any money. Under both the statutory text of the two operative provisions here and this court's precedential decision in WrenCare, that means that administrative exhaustion is not required. Alternatively, under the only text here that deprives courts of subject matter jurisdiction, which is 405H of the Social Security Act, that text does not apply, and so whatever exhaustion might be required here, if the other side is right about that, would not be jurisdictional. And for that reason, the other side waived the exhaustion objection by not raising it in a Rule 12 motion. So let me take each of the statutory provisions that apply here or that may not apply here as the case goes, in turn, and explain why they don't support what the district court did, and then turn to this court's precedent in WrenCare and its non-precedential decision in Trinity. Also, with regard to Trinity, does your argument as to the exhaustion issue require us to overrule or to say that Trinity was incorrectly decided? It does not, Judge Englehart. In fact, on that question, on exhaustion, we believe that Trinity was correctly decided, and let me just give you the nutshell reason why. In fact, the MAO had said that the service at issue, which was in-home dialysis, is not covered under Medicare, period. We consider that to be an organization determination. That's the classic organization determination. We don't take issue with that. Now, I know if you're looking just at the opinion, which was short and unpublished, it says something about full reimbursement, so you may think, oh, was that a question about the rate? It wasn't. If you look both at the district court's opinion and the MAO's brief, which is actually authored by my colleagues across the aisle here, it's very clear that what happened is the MAO said, this is not covered, but because we don't want you, the provider, to turn around and sue our enrollees for reimbursement, we will make you a settlement offer, we will pretend like it was another service, and offer you that amount of money, which was like 10 percent. But the determination at issue in that case was this service is not covered. That is an organization determination. It is subject to exhaustion. We're not asking the court to disagree with that case. They're perfectly reconcilable. The difference here is the sort of claim that CARIS has brought against United, the provider has brought against the MAO, is that we had a contract outside of Medicare, a private contract, that you agreed to give us a certain amount of reimbursement, regardless of the Medicare rate. We might think that was the Medicare rate. You might disagree. It doesn't matter. We had an implied contract over the course of 10 years, and let me just I was going to ask, you said implied contract, so it's not right, not in writing. Correct, Your Honor. All right, so what is the source of this implied contract? What are the foundational supports of it? So the legal source is Texas law. The factual allegations that we have raised in our petition, and they're just that, they're allegations at this point, they haven't been adjudicated, are that over the course of 10 years, United consistently asked us to use a certain set of billing codes in order to get reimbursement for the diagnostic services we offered. And let me just give you one But where was that obligation set, or where was that clarified? I mean, it's just the practice of the parties? It's a course of dealing, and that's recognized, Your Honor, under Texas law as the basis for an implied contract. Let me just give you one flavor of how strong those allegations are in this case, which might be a unique case in that respect. One of the disputes between the parties relate to the CPT codes we use. Those are the codes that relate to procedures. They say we should have used what's called a panel code, which means all the different tests we run just use one code. We say no, we were supposed to do each, it's called biomarker, each biomarker with a separate code. So that's the dispute. Under our allegations, during the time at issue, which was 2015 to 2016, their system did not even allow us to use the code they claimed to be required. So in my view, at least, it's hard to imagine a stronger implied contract claim than where the other party over the course of years doesn't even allow you to do the thing that they say you were required to do. And then they came back It's somewhat surprising to me, and it may just be my ignorance, I'm not a health care expert, insurer or otherwise, provider, whatever, that this proceeds with no written agreement whatsoever. I mean, how am I to conceptualize that? Well, Texas law, in addition to the law of many other states, recognized both oral contracts and implied contracts. I get all that, but in the health care business, where we're talking about significant documentation requirements, regulatory requirements, coding requirements, health care fraud requirements, a lot of statutes, these two sophisticated parties just proceeded with nothing in writing? Well, that is the allegation, Your Honor, and of course a Texas state court would be Is this common? Judging from how often this comes up in the case law, I don't think it's super common, although I will note this, in the amicus brief that HHS filed in the Sixth Circuit case, it's called Ohio Chiropractic, the HHS recognized that the contracts for these sorts of provider MAO relationships could be in writing or otherwise. So HHS, the agency that looks at this a lot more than I do, at least, has recognized that they don't have to be in writing, that they could be oral. But I'll say this, Texas state courts are competent to resolve these claims, and I'm sure once we get to the merits of this claim, the other side will make arguments along the question Your Honor posed. No, they would never have proceeded without a written contract. That's not how we do it in the industry and so forth. We'll make counterarguments, and a Texas state court Well, I guess this is important, though, because under WrenCare, which is binding precedent for us, the key holding in that case, as I read it, I wasn't on the panel like Judge Clement, but it is what is the impact on the enrollees? What is the patient impact? Is there one? Or is this just a dispute between provider and insurer such that the enrollees are not impacted at all? How can we say they're not impacted if things like price and billing and reimbursements and all those kinds of things are just not articulated anywhere, or are they? On the sorts of claims here, regardless if those elements are articulated in a written contract, there is no chance that the enrollees can be liable because of the statute, and let me explain why. There's two ways this case can go. One, whoever adjudicates this can decide there is a written contract. You're entitled to what you say, or maybe you're entitled to something different under the I'm sorry, I didn't mean to say a written contract. There is a contract implied. You're entitled to what you say, or maybe you're entitled to something less. Either way, we'd be entitled only to whatever the contract provides, how that case is adjudicated. But you said that they wouldn't allow you to process this with the codes that you were using, that now they say you should have been using. What does that mean technically? It means that we could not, and this is just an allegation in our petition that I'll remind the court. It means that we could not submit a code for reimbursement, the type of code they think we should have submitted. It would have been rejected by their system, and I believe it was a subcontractor they were using at the time, but it would have been rejected by their system. So the payment process That didn't happen. That didn't happen. Well, we were submitting what we thought were the right codes, which were the only codes they accepted. Were they being processed? The codes we submitted were being processed. This whole dispute arose because years later they came back and said you should have been doing the panel codes. But to continue on Judge Wilson's question, the other way this suit turns out is the adjudicator says no, you don't have a contract, maybe because this thing never would have not been in writing, or whatever the merits argument is. If we don't have a contract, under subsection K of 1395W22, we're required to take the Medicare rate as payment in full. And what payment in full connotes in this statutory world is we can't turn around and sue the enrollees. So if we lose the contract claim, we can't sue the enrollees. If we win the contract claim, we get what we want. Either way, and I'm pretty sure this is undisputed, the enrollees cannot be liable, they cannot be sued. And under RENCARE, and even more importantly, the statutory text of these provisions, there simply is no exhaustion requirement. Let me just turn to those texts really quickly. There's two provisions. One is 405H of the Social Security Act, and that's incorporated by reference into Medicare. This court held in Benjamin, which was a 2019 decision, I believe, Judge Clement, you authored it, that unless a case concerns an entitlement to benefits, it's not covered by 405H. But the court wouldn't even need Benjamin to get there here, because the sentences of 405H do not pertain to this dispute. The second sentence is about the review of decisions of the health secretary. This is not that. The third sentence only applies to disputes under 1331, which is federal question jurisdiction, or 1346, which is essentially the FTCA. This is not that. And in Benjamin, the court said, we're going to apply that according to its plain terms. So that means two things. One, 405H could not be the source of any exhaustion requirement here, because by its plain text and under Benjamin and under RENCARE, it does not apply. Two, even if there is an exhaustion requirement here from some other source, it can't be jurisdictional, because 405H is the only statutory provision in play here that speaks to a court's jurisdiction. And this argument was waived. It was raised sua sponte by Judge Starr, because he believed it went to subject matter jurisdiction. If this court disagrees with that, if the court concludes 405H does not apply, they have waived the argument, because they did not raise it under Rule 12. Now the other source, statutorily, of exhaustion, potentially, is 1395W22. Statutory numbers get really long in this area of the law, but that's the provision about administrative exhaustion, or I shouldn't say exhaustion, the administrative process under Medicare Part C. And I'd like to direct the court's attention to subsection G5. That's the provision that talks about when you can appeal from the MAO level up to the administrative level. And if you look at the plain text of that provision, it says that an enrollee can appeal when he or she believes they've been denied a health benefit improperly or has been asked to pay something that they're not supposed to pay. It doesn't say anything about provider appeals. It doesn't say anything about private contract disputes between providers and MAOs. It talks about an enrollee being able to appeal. Now the regulations contemplate that an enrollee may assign a claim to a provider to go ahead and appeal. And so, for example, if the enrollee believes they've been denied authorization to get a service, the provider could say, at least if the regulations are consistent with the statute, you know what, I'll give you the service, I'll pursue your claim for you. I'm going to put on the enrollee hat and pursue the claim. I don't think the court in this case needs to decide whether that regulatory assignment procedure is consistent with the plain text of the statute, which doesn't speak to assignment or providers at all. I think it's sufficient for this case to say what the court said in WrenCare, which is if the provider is asserting a contractual right under an alleged private contract, that could not be the result of an assignment from the enrollee, because the enrollee is not a party to the alleged contract. The things that the enrollee can assign are things to which the enrollee has a statutory entitlement. So that is... Is there any arguable assignment here by enrollees? Judge Wilson, there is nothing in the record that purports to be an assignment, but more fundamentally the thing we're asserting is that we have a private contract. That is not something an enrollee could assign, because there's no claim that the enrollee was a party to the contract. That's different than a provider who claims they haven't received the Medicare rate. So they don't claim they have a contract, they say, MAO, you didn't pay me the Medicare rate. That arguably can be conceived of as an assignment, and this is what I mean by that. An enrollee could say, you know what, I'm just going to pay the provider out of pocket for the service, and I'm going to go to the MAO and say, reimburse me at the Medicare rate, because that's my statutory entitlement, and you can find that at 1395W22A. That's what defines the statutory entitlement. It's not just to receive the health procedure, it's also to receive payment at the Medicare rate. I guess I'm kind of thinking in my simplistic mind, this isn't a question of the enrollee has paid a copay or some partial payment, and basically there's an implied agreement between the enrollee or the patient and CARIS to say, we're going to go get the rest. Correct. This isn't a net-net thing, this is a, we want to get paid for our provision of services. Correct. That is the classic assignment where the provider says, you know what, don't do the copay, we'll go pursue your claim that you don't have to copay with the agency. Has CARIS been paid? I guess what CARIS has been paid is what United has paid over the years, and the question is really recoupment. Correct. But United's claim is that we overpaid you, and so you weren't entitled to that. Our claim is, even if you're right, United, under Medicare, we don't think you are, but even if you are, we don't want to litigate that, we just think we had an agreement implied under Texas law that you would pay us what you've been paying us regardless of the Medicare rate. Correct. That's our claim. Now, maybe we win that, maybe we lose that before an adjudicator, but that is what's being adjudicated. And one last point before I sit down that's important, ALJs in Washington or wherever they sit do not want to decide the implied contract law of 50 states. HHS has said that repeatedly in amicus briefs. Their expertise is the Medicare law and regulations. This case is about the law of Texas and what amounts to an implied contract. I'll reserve the remainder of my time for rebuttal. Thank you. Thank you, counsel. Counsel, you've reserved five minutes. Mr. Cololuri. Thank you, Your Honors. May it please the Court, Don Cololuri for the United Defendants and my police. There are two issues, as Mr. Bash says, in this case. First, the propriety of the removal and denial of motion of remand, and second, the dismissal for failure to exhaust the administrative remedies. I want to deal with the removal first. That got kind of lost in the shuffle here in counsel's argument, but I think it's the much easier question. This Court in Trinity made clear that federal officer removal is available for MAOs operating under the guidance and regulation and direction of CMS in administering Medicare Advantage plans. The four-part test, first just being you are a person, obviously, is met, but are you acting under the federal official? Court said, yes, that's focused on the relationship, and the relationship in MAOs and CMS are so close that, in fact, you are operating under that. Second, is there a connection? Is the complaint of action something that's related to that? Again, the Court said, if we're talking about a denial of coverage claim, absolutely. Just last week, in Plaquemine Parish v. BP America, which is at 2024 WL 2746246, a panel of this Court that I think, John Englehart, you may have been on, cited Trinity approvingly as the types of relationships and actions that come under federal officer removal. So this case is on all fours with respect to that. Trinity was controlling. That's what Judge Starr looked at and said, we meet that test. And then the only question left . . . Does every dispute between an MAO and a provider create federal officer removal jurisdiction? Not necessarily, but that gets us to the next question of did we have a colorable federal defense, which is the next requirement? And in fact, we did. It's the same one that was asserted and upheld in Trinity, which was failure to exhaust. We also asserted preemption. Medicare has a very strong, explicit conflict preemption provision, and we asserted that as well. However, we can talk about that, but step one is this has to be a colorable federal defense. It's not required that we win. It has to be colorable, i.e., not frivolous, not inserted for purposes of just manufacturing jurisdiction. Well, we had and relied upon a case directly on point from this Court in Trinity, and that Trinity case followed an Eleventh Circuit opinion on the same issue, that the provider would have to exhaust its administrative remedies for this type of claim. And so, there's just no way to argue the exhaustion was not colorable. In addition, as I said, we had the preemption defense. The preemption, we cite the cases, I'm not going to go through it all in oral argument, but in our brief, we cite the cases how common law claims under state law will be preempted when at bottom, what we're talking about is a claim for Medicare benefits. And that is what we're talking about here. Mr. Bash is trying very hard to distinguish that and say this is not about a claim for coverage. Well, it is. What is the enrollees' interest in this case? The enrollees are the ones who initially are requesting the service, obviously, under their Medicare Advantage plan. Under Medicare Advantage, that can be done by paying the provider directly, which happens an awful lot, obviously, as opposed to reimbursing the payment. In that context, as Mr. Bash noted, in essence, the provider has, is taking the position, we will not pursue the enrollee. We essentially step it into the shoes of the enrollee, and we cannot pursue them. They cannot be liable further. But they step into those shoes. And that's the basis on which they are able to appeal. And to the question, Judge Wilson, of the assignment, the regulations say that an organization determination, which is a coverage determination, can be appealed by the enrollee. It can be appealed by the enrollee's assignee, which it goes on in the regulation to define as a provider who has furnished the services and agrees to hold the enrollee harmless. So But is it the case, then, that every patient effectively assigns such a claim to the provider? When the claim is for Medicare benefits, that is correct, Medicare Advantage benefits. Doesn't that sort of, I mean, it just sounds like it sort of swallows the whole rule, then. Would providers not always be assignees, then? Provider, and providers do routinely appeal these things. That's how it Well, maybe so, but here there's no evidence, according to counsel opposite, that any patient has assigned anything back to CARES. And again, the regulation doesn't require an actual assignment. It requires a provider who has given, has provided the services, stepped into the shoes of the enrollee and agrees to hold them harmless. How do you square that argument with RENCARE, though? I mean, it seems like what you're arguing is something different than whether it's a contractual relationship or not a contract, such as in this case. It seems like RENCARE addresses and refutes the argument that you've just made. I don't think so, Your Honor, and here's why. RENCARE was an express written contract for a rate of payment for services that was in excess of the Medicare rate, and CARES has tried in this case to conflate those, to blur that line. But what RENCARE was about is, okay, for CPT code X, the Medicare rate is X, but we will agree to pay you more. And that's done in these provider contracts. And to your point, Judge Wilson, aren't these in writing? They're in writing when there's a provider contract, and what's sometimes called network provider, but the providers enter into contracts and they have specified what rate they're going to get paid for what their codes are. But you heard counsel opposite say that it's not prohibited that they're not in writing, I mean, that they must be in writing. That's correct. That's their argument. Here you've got a multi-year course of conduct between these two parties where United is paying CARES, seems to be at least an implied agreement there to continue that up until it wasn't. And in Tenet, which was the 11th Circuit case, they say you can't do that, it has to be expressed, has to be in writing. That's what Trinity relied upon. But moreover, it's not a, their claim is not a claim for you agreed to a different rate of payment. All their claim is, when you look at their petition, at least it's paragraph 53, it says that we had an implied agreement that you would pay us based on the billing codes, which are in the original petition, they said Medicare mandated, they pulled that language out. But it's at least the same ones that Medicare uses by their own admission. And that's, you know, that's the implied agreement. Well, that doesn't, that implied agreement doesn't impose any obligation any different than a non-contract provider. That's how non-contract providers are paid. So the distinction is, they are not arguing about a rate. Rencare was saying, look, you agreed to pay these people this rate, it was in excess, you had a prompt pay provision in there, you had a Texas governing law provision in there, and they're suing you only for your failure to pay that rate that you agreed to. That's not our situation at all. We're not talking about what's the rate of reimbursement here. What we're talking about is, are these claims covered? And when the court goes back and looks at the record, what the allegations are is that the United went back, based on an audit, done under the direction of CMS regulations to see whether or not claims were properly covered. Let me ask you, again, where would we draw the line under the case law and under the provisions that we're talking about here? If, are you saying that every non-contract provider, such as the one involved in this case, every time there is a dispute, that that necessarily must be submitted to the administrative process and that must be exhausted, as opposed to contract providers? I mean, it seems like you're saying that if you don't have a contract, you've got to go through the administrative process, no matter what the nature of the dispute is. That's generally correct. There may be exceptions that I'm not thinking of, Your Honor, but that's generally correct. That's what Tenet says. That's what Trinity says. That's what the Jet Rescue and Ohm case out of the Ninth Circuit say. That's what you are, because what you are asking for at bottom is a claim to entitlement to benefits, claim to reimbursement for services. And you can call it unjust enrichment, and you can call it implied contracts, and you can call it stoppals. I mean, lawyers are very creative about coming up with ways to do that. But what the cases say is, is that at bottom really just a claim for entitlement to reimbursement under Medicare? But there's nothing under Medicare that prohibits a provider from contracting for a sum greater than a Medicare payment. That's correct, but that's not what their allegation is. Their allegation is you agreed to pay us under these billing codes, and that's the implied agreement. And what happened was, when we went back and did the audit, the claims were disallowed. So when counsel says, oh, I agree, if the claim is for you didn't provide, this is not covered, then sure, we can appeal. But that's exactly what happened. We went back and disallowed the claim, said it was not covered for a variety of reasons that are spelled out, relating to lack of medical records or medical records that didn't support the use of the billing code that was being used. So that's what the basis was for saying these claims were not denied. Not that we're going to pay you at a smaller rate or a Medicare rate versus your agreed rate, nor did they come back when we did that and claim, well, wait a second, you agreed to pay us at some higher rate. They came back and argued with us. It's in the evidentiary record, their lawyer's letters, saying, wait a second, you're misinterpreting what Medicare requires. You're getting it all wrong. And so that was their response. And that claim is ultimately just a claim for Medicare benefits and is channeled, to use the language of the cases, into the administrative procedure. What's the value of the recoupment that you're seeking? Excuse me, Your Honor? What's the value of the recoupment that you're seeking? The recoupment in this case totaled $1.2 million, approximately. And how long a period did that cover? I believe that was over two to three years worth of claims. And the point being that RENCARE, first of all, was not a federal officer removal case. It was a rising under case. It was a complete preemption case saying, Medicare has to be the basis of your claim. And Judge Clement, I believe you were even on the panel in RENCARE, the panel said no, because they're only suing about this failure to pay them the amount they said they were required to pay. So that's a big difference. And it's very similar, honestly, to another area where this court has dealt a lot with, which is a complete ERISA preemption, where the Lone Star series, a line of cases, talks about are we arguing about a rate of payment, or are we arguing about a right to payment? And the rate of payment for a contract provider is spelled out in the contract, and the contract provides the basis for the claim. If you're a non-contract provider, and you're trying to rely on some other state law basis for the claim, that is not a rate of payment, that's your right to payment. And the courts say, no, the ERISA complete preemption takes that over, and your claim necessarily arises under ERISA. And that's basically, and you did offer an opinion, Judge Clement, in the Equality Infusion case back in 2008 on that subject, saying you can't come in and say unjust enrichment and those types of claims, because it has to be a rate of payment, not this right to payment under some other state law. That is completely preempted. That's what RENCARE was about. But on the context of Medicare preemption, they wanted to say, Medicare completely preempts your claim, even though they were a contract provider claiming only that you didn't pay me that rate that you had in the contract. So, let me move on from that quickly if I can. In this case, in addition to being an assignee by virtue of, well, let me step back and talk about. As I mentioned, you can appeal as a provider, and Mr. Bash I think agrees, if you're an assignee as defined in the regulation, which includes someone who's provide the service and holding the enrollee harmless. And significantly, one of the things that's in the appeal process, and their expert at the evidentiary hearing made a big deal out of it, is you've got to sign a waiver of liability to formalize that you're not going to proceed. So they had every ability to proceed through the administrative exhaustion and to sign that waiver and move forward. They chose not to. The other way you can be a appealing party under the regulation is if you have an appealable interest. And again, that just simply goes to the common sense point that the way plans are structured, where you pay the provider directly as opposed to reimbursing the enrollee in most cases, the provider is stepping into the shoes of the enrollee. They're the ones that have the incentive and the ability to appeal. Now, rent care, as I say, didn't deal with federal officer removal. Did talk about the exhaustion and talked about this idea, well, if the enrollee has no further liability, then why is there any appealable right there? And frankly, that may be dicta, but it certainly goes too far, I think. Because as we see, the regulation is talking about, that's exactly the situation where the provider gets to appeal. And number two, it's too cramped a reading of the policy behind the exhaustion requirement. It's not just about, is the enrollee at financial risk, or even is the government at financial risk? If you go back to the Supreme Court's cases, and Salfi and many others since then in the circuit courts, it's about not having a premature judicial intervention in a dispute where CMS, excuse me, and HHS has the expertise and can develop the record and deal with some of these very complicated Medicare regulation questions, which would be appropriate here. And that's, I say, that's what they argued about with us at the time. My time is very short, so let me jump to one other thing. Council has made an argument, which really didn't get developed until the reply brief, that there is really no jurisdictional component to 405H other than the third sentence, which says that no district court can have 1331 or 1346 jurisdiction. And that it's not subject matter jurisdiction, and somehow we waived it by not putting it in our original motion to dismiss. And there are just multiple problems with that. Number one, it is jurisdictional, as your opinion in Benjamin talks about, Judge Clement. Yes, third sentence says no 1331 or 1346 jurisdiction, but the second sentence is what channels a dispute over Medicare benefits into the administrative procedure in 405G and makes that the exclusive jurisdictional basis to get into court. And that's in Benjamin, that's in Salfie, it's in all the cases that this is jurisdictional,  it's jurisdictional, and the cases stand clearly for that. Second, this idea that it was waived by not including it in a 12B motion. A failure to exhaust is either a subject matter jurisdiction, which we say it is in this case, which can't be waived by failing to include it in a 12B motion. Or it's not denominated in 12B. It's not one of the personal jurisdiction venue, i.e. join your parties, that would require, have to be brought in the first motion at risk of waiver. So those arguments don't fly either substantively or procedurally. This is a case about denial of coverage, albeit done retroactively with a recoupment.  And we had a good faith basis to remove a more than colorable federal defense. And the district court did not err in dismissing it for failure to exhaust. With that, my time is up. Thank you, counsel. Rebuttal. Thank you, Judge Englehart and the panel. Two quick correct the record points. You heard counsel just finish with the point that this is somehow now a coverage determination. That is not what the parties have ever argued and it's not what the district court understood. I would point the court to the following pages from the record on appeal. 283 and 308, that's where they admitted in their briefing below that this was a billing code dispute. There was no dispute about that these services are covered under Medicare. And page 844, where the district court frames it the same way. Their appellate brief has been very coy in saying, well, we denied service and it's not a coverage dispute. It's about billing codes and whether we submitted the right billing code which governs reimbursement. Two, I think you just heard counsel say that we didn't raise the jurisdictional point or we didn't develop it until the reply brief. Starting at page 50 of our opening brief, we have a whole separate section with its own heading on the point. They did not respond at all in their appellee's brief and I didn't hear any cogent response today. The plain text of section 405H does not apply to these sorts of disputes. This is not under 1331 or 1346, and we're not challenging the findings of the health secretary. It has been waived. Now, if they think they have the right to raise it at a later stage of the case, that could be decided on remand. But they certainly did not raise it under rule 12. And I'll just note, the court doesn't need to decide this, but under the 11th circuit rule, and we cite Brooks versus Warden in our reply brief, a non-jurisdictional exhaustion defense is waived if not raised in a pre-answer motion. I'm not aware this court has addressed that issue, but that could all be decided on remand. On the substance, you heard a lot of talk about the regulations and what the regulations allow you to challenge. Putting even aside whether that's consistent with a statutory text that says absolutely nothing about providers pursuing the administrative process. Just looking at the regulations, section 562C2 of the regulations say, once there is no more enrollee financial interest, there's no appeal, period. Now, in their brief, they say, well, that's a definitional, it's not a definitional provision. It's called general provisions. It's an umbrella provision that governs the entire regulatory scheme. They have a footnote on it in their brief that I don't understand what the distinction is. It could not be clearer. The regulations say, if there is no enrollee financial liability left, the appeal ends. There is no enrollee financial liability at issue in this case. This is purely a private contract dispute. But what of counsel opposite's argument that, well, effectively what's happened here is whenever you provide services, there's an assignment from the patient to the provider to pursue reimbursement. Judge Wilson, if that were true, it could matter for the provider who does not claim to have a contract. So the enrollee would effectively assign the enrollee's statutory right under 1395W22A to reimbursement at the Medicare rate to the provider, and the provider would pursue that. I don't think the court needs to decide in this case whether that's consistent with the statute, but that's how that would work. If there's no contract here, then, is counsel opposite correct? Well, our allegation, Judge Wilson, is that there is a contract. That hasn't been adjudicated, but the point we make is that where a party in our position alleges a contract, that is not a claim subject to exhaustion. Maybe we lose on the merits, whether that's adjudicated in federal or state court, but that's our claim. We are not claiming that we are entitled to reimbursement at the Medicare rate in a way that's different than what we got. We are saying that regardless of the Medicare rate, we have a contract. If all you have to do is allege a contract, doesn't that sort of blow up the regulatory scheme or the policy rationales counsel opposite was discussing? I don't think so, Judge Wilson, in part because whether it's state or federal courts, they're very competent to adjudicate whether a contract claim is meritless. And if you come in with an implied contract claim that has no basis under Texas law or Nevada law or whatever state you're invoking, that can be dismissed under 12B6. So where's the best case where this theory prevailed? An implied contract claim? Yes. Well, I'm not aware of any case other than the Tenant 11th Circuit case where it has been raised. Now, what the 11th Circuit said in Tenant is that implied contracts are prohibited by the statutory scheme because the provider must accept the Medicare rate in full. That's wrong for two reasons. So the 11th Circuit rejected this claim, but where has a claim like this succeeded beyond the dismissal stage? I'm not aware that it has been adjudicated one way or the other. I think it's pretty rare in part because the requirements to establish an implied contract are quite high, and lawyers aren't just going to sign complaints alleging an implied contract for no reason. I will note that in the Sixth Circuit case in Ohio Chiropractic, although it was ultimately resolved on a removal issue ground, the HHS submitted a brief saying that parties can enter into contracts written or otherwise. So at least in the Sixth Circuit, HHS has taken the position that implied contracts are permissible. And I see my time's expired. We'd ask the court to reverse. Thank you, Counsel. Thank you both for your briefing in this case and for your oral presentations here today. The case